IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**FRANKLIN DEWAYNE MILLER**                                                **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 1:14cv378-LG-RHW**

**CAROLYN COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY**                                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Franklin Dewayne Miller filed this action October 6, 2014 seeking judicial review of the denial of his claim for Social Security disability insurance benefits and Supplemental Security Income (SSI). Miller asserts the Social Security Commissioner's decision should be reversed on grounds that Administrative Law Judge (ALJ) Nancy L. Brock failed to fully and fairly develop the record with respect to Miller's impairments, and for lack of substantial evidence supporting the ALJ's findings as to Miller's residual functional capacity and credibility and the finding that other work exists that Miller is capable of performing.

Facts and Procedural History

On August 8, 2011, Miller filed applications for disability insurance benefits and SSI, alleging he became disabled April 21, 2010 at age 54.[1] [11, pp. 105-110, 111-116] Miller asserted he was disabled due to late effects of cerebrovascular disease (also described as "complications from stroke" [11, pp. 84, 142]) and affective/ mood disorders. [11, p. 73] The claim was initially denied December 20, 2011, and denied on reconsideration January 27, 2012.

---

[1] At the May 1, 2013 hearing, Miller's counsel was allowed to amend the disability onset date to Miller's 55th birthday, January 31, 2011. [11, p. 66] Miller's year of birth is sometimes stated as 1956, but as 1958 in records from his primary care physician Dr. Dimitriades' [11, pp. 307-314], and from Memorial Hospital [11, pp. 208-269 (except for pages 262-263 which are not Franklin Miller's records)].

[11, pp. 73-76, 79-85, 87-90]  Miller has been represented by counsel throughout the proceedings on his applications for benefits.  [11, pp. 77-78]

ALJ Brock conducted a hearing on Miller's claim on May 1, 2013, at which Miller and Vocational Expert Robert E. Walker, Jr. testified.  [11, pp. 60-72]  According to his hearing testimony, Miller was born in January 1956.  He has a tenth-grade education, is divorced and lives with his mother.  [11, p. 63]  His past work has been as a pipefitter, commercial fisherman and truck driver.  He testified he last worked as a truck driver from March 1, 2011 until April 1, 2011, earning $1645.00 and this is borne out by his earnings records.  [11, pp. 135-136, 130]  Miller stated he stopped working because of his medical condition; that he became disabled when he had a stroke on April 21, 2010.  He states he has coordination problems and can no longer back the truck or "handle the gears and stuff."  He further states that memory problems (he gets lost sometimes) and right-side weakness keep him from getting around out in the bay and the bayous in his boat, and he lacks the strength to hold the boat steering wheel and reach and grab his crab pots and hold onto them. [11, pp. 64-65, 69]

Miller testified he spends his days around the house, walking around, sitting and lying down at times for neck and arm pain.  He does no housework other than the dishes sometimes [11, p. 65], but he mows the yard three to four hours every two or three weeks.  [11, p. 180]  His mother does the grocery shopping, cooking and housekeeping.[2]  According to Miller, he can stand or walk for 10-15 minutes; his right leg hurts and he gets dizzy and gets a headache walking; he could probably lift "a good bit" with his left arm, but with his right arm he has a problem with a gallon of milk.  [11, pp. 65-66, 69]  He cannot move around like he used to and

---

[2]Miller's mother states he watches tv, reads, takes short walks around the yard, doesn't get much sleep, but has no problem with his personal care.  She does the cooking and shopping; he does a little mowing "about once a month."  She stated Miller goes outside daily, talks with friends and family on the phone every day, visits family, and goes places alone.  He drives but not often, is able to pay bills and count change.  His memory is not as good as before; he sometimes forgets things and does not like changes to his routine.  [11, pp. 158])

thinks this has worsened with weight gain (he weighed over 300 pounds at the time of the hearing).  He testified he has seen Dr. Tanya Smith every two to three months since January 2011.  He claims he has shortness of breath; sleep apnea (sleeping four or five hours a night and napping during the day); and takes two blood pressure pills daily.  [11, pp. 63, 67-68]

Vocational Expert Walker testified Miller's prior work as a commercial fisherman and a pipefitter in a shipyard is heavy work with a skill level of 4.  Walker testified Miller could no longer work in those occupations, or as a truck driver as that work is above a routine, repetitive level.  Considering Miller's work history, age and education level, limited to work of a routine, repetitive nature at a medium exertional level and with a moderate level of supervision, Walker testified Miller could do work as commercial cleaner, a kitchen helper or a hand packer (one who boxes and shipping containers), all of which are of medium exertional level with a skill level of 2.  Walker testified such jobs are available in the national economy in numbers of 200,000, 225,000 and 150,000, respectively, and all are routine repetitive work. [11, pp. 70-71]

On May 17, 2013, ALJ Brock issued her 12-page decision finding Miller has not been under a disability, as defined in the Social Security Act, from January 31, 2011 through the date of the decision.  [11, pp. 26-37]  The Appeals Council denied review on July 14, 2014 [11, pp. 9-13], and Miller filed the action presently before this Court.

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a

scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris v. Apfel*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

<u>Analysis</u>

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). It was Miller's burden to prove a disability which precluded him from engaging in substantial gainful work during the pendency of his applications for benefits. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). It was also his burden to produce evidence to support his claims. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

The record shows ALJ Brock applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i-v). Step one requires a determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work activity that involves significant physical or mental activities and is usually done for pay or profit. Judge Brock found Miller had not engaged in such activity since January 31, 2011.[3]

Step two requires determination of whether the claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits his ability to perform basic work activities. ALJ Brock found Miller has severe impairments of depression, anxiety, obesity and chronic obstructive pulmonary disease (COPD) which "cause more than minimal work-related limitations." Judge Brock found non-severe Miller's medically determinable impairments of status post transient ischemic attack

---

[3]No explanation is given regarding Miller's work from March 1-April 1, 2011, earning over $1600. [11, pp. 135-36]

(TIA), vertigo and headaches, as they do not cause more than minimal limitation in his ability to perform basic work activities.  In making these findings, ALJ Brock relied on Emergency Room records and inpatient records from Memorial Hospital at Gulfport, office treatment records from Dr. Mishra and Dr. Dimitriades, and Miller's medical records from Coastal Family Health Center in Moss Point, Mississippi.  The undersigned finds ALJ Brock has fairly summarized those records in her decision, and that the records provide substantial evidence supporting her conclusion as to Miller's impairments.

Step three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment/combination of impairments is of such severity and meets the duration requirement, the claimant is disabled; if it is not, the analysis continues to step four.  Judge Brock "specifically considered the combined impact of [Miller's] impairments, including obesity," and found they do not meet or medically equal the criteria for any listed impairment.  [1, p. 29]  Again, the ALJ fairly and accurately summarized the record evidence which led her to these findings, in particular the Comprehensive Mental Status Evaluation by Clinical Psychologist Dr. John Stoudenmire on January 11, 2011.  The evaluation indicates Miller has experienced no episodes of decompensation, has mild restriction with regard to activities of daily living,[4] mild difficulties in social functioning,[5] and moderate difficulties with respect to concentration, persistence or pace.  While he told Dr. Stoudenmire he sometimes became confused while driving, Miller also reported he enjoyed reading mystery books, fishing and watching movies, and had no difficulty using a telephone, all of which require

---

[4]He tends to his own grooming needs, can prepare simple meals, and mows his grass with a riding lawnmower. [11, p. 285]

[5]He stated he does not go to church, and did not shop very much, but did visit friends at times. [11, p. 286]

some degree of concentration. The record contains substantial evidence supporting the ALJ's finding that Miller fails to meet the criteria for a listed mental impairment. 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

At the fourth step of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity, *i.e.*, his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments, and (2) whether he has the residual functional capacity to perform the requirements of his past relevant work. If claimant can perform the requirements of his past relevant work, he is not disabled; if he cannot, the inquiry proceeds to the fifth and final step of the evaluation where the Commission must determine from the residual functional capacity, the claimant's age, education and work experience whether the claimant can make an adjustment to other work. If he can do other work, he is not disabled. To support a finding that a claimant is not disabled at this step, the Commission must provide evidence demonstrating that other work exists in significant numbers in the national economy which the claimant can do.

ALJ Brock found Miller unable to perform his past relevant work as a pipefitter, commercial fisherman or truck driver. The ALJ further found, based upon the entire record, that Miller has the residual functional capacity to perform medium work with the additional limitation that the work consist of routine repetitive tasks and that he have a moderate level of supervision. The ALJ found, based on the record evidence and on Vocational Expert Walker's testimony that, considering Miller's work history, age and education level, limited to work of a routine, repetitive nature at a medium exertional level and with a moderate level of supervision, Miller could work as commercial cleaner, a kitchen helper or a hand packer and that such jobs existed in significant numbers in the national economy.

The ALJ found Miller's medically determinable impairments could reasonably be expected to produce the symptoms he alleges, but that his statements as to the intensity, persistence and limiting effect of his symptoms were not entirely credible, and are inconsistent with other evidence of record. Explaining this finding, the ALJ noted that while Dr. Mishra diagnosed Miller with depression in June 2010 and prescribed Celexa and Trazodone [11, pp. 244-245], Miller has neither sought treatment from a mental health care specialist nor required inpatient psychiatric treatment. [11, pp. 286, 329] *See Doss v. Barnhart*, 137 Fed.Appx. 689, 690 (5th Cir. 2005) ("failure to seek treatment for depression is an indication of nondisability"). Medical evidence in the record consistently indicates Miller exhibited good insight, appropriate judgment, intact recent and remote memory, euthymic mood and appropriate affect. [11, pp. 333, 335, 345, 350, 356, 359, 363] The undersigned finds substantial record evidence supports the ALJ's conclusion that, despite impairments of depression and anxiety, Miller is capable of the mental demands of work, if limited to routine repetitive tasks with moderate supervision.

The ALJ considered Miller's obesity despite the fact that "no treating or examining medical source has specifically attributed additional or cumulative limitations" to that condition. ALJ Brock particularly considered obesity in conjunction with Miller's COPD but found the medical records do not support his claims of extremely limited functional capacity due to COPD or obesity. Although Miller has been treated for COPD, pulmonary function studies in December 2010 showed only mild obstructive airway disease, and the examiner noted Miller gave "variable effort" during the testing. [11, p. 270] Miller was found to have no shortness of breath or cough on examination of November 22, 2011. [11, p. 340] The record supports the ALJ's finding that while this condition requires medical management, the medical records do not show Miller has received any emergency room or inpatient treatment for shortness of breath or

chest pain. Indeed, his medical records consistently reported he had no symptoms of chest pain or shortness of breath. [11, pp. 309, 333, 334, 340, 344-345, 349, 356, 359, 363].

During Miller's April 22, 2010 hospitalization for the TIA (his "stroke"), he had a normal chest xray, normal EEG, normal angiography of the Circle of Willis, normal CT and MRI/MRA studies of the brain with no evidence of acute ischemic stroke, no evidence of hypokinesis, and a bilateral carotid survey showed no hemodynamically threatening stenosis or changes. His mental confusion resolved while he was in the emergency room, and his "minimal right hand diminished grip strength" was improving when he was discharged on April 24, 2010. [11, pp. 214, 219-220, 233-236, 247, 261] His longstanding family doctor, Dr. Dimitriades, opined on May 5, 2010, that while Miller was unable to drive a truck or operate his crab boat at that time, the doctor expected Miller would improve to the point that he could return to work over the next several months. Dr. Dimitriades noted Miller's stance and gait were normal on May 25, 2010. [11, p. 265-266] Miller's claims of continued significant right-sided weakness, and difficulty standing and walking are inconsistent with the medical evidence. Dr. Mishra noted he had normal gait, motor strength and muscle tone on June 29, 2010. [11, p. 245] Dr. Dimitriades' follow-up record of July 26, 2010 states, "He is actually doing excellent," and is starting to drive a little. [11, p. 264] Dr. Dimitriades records also show that Miller had a normal gait in January 2011, and he had no limb weakness or difficulty walking in March 2011. [11, p. 309-10] In November 2011, Dr. Badve found Miller had no significant neurological deficits, noting that he had normal range of motion in upper and lower extremities, did not use a cane, and his gait was within normal limits. [11, p. 341] Dr. Badve also noted Miller gave poor effort during neurological and power examinations. Numerous other medical records documented Miller's normal gait, tone, bulk and strength. [11, pp. 333, 335, 345, 350, 356, 359, 363] Plaintiff's assertion that ALJ Brock failed to address an additional impairment of diabetes is

without merit.  The record contains no testimony or medical evidence that Plaintiff has diabetes.  Plaintiff cites to page 262 of the administrative record for this point, but pages 262-263 are not Franklin Miller's records.  These two pages are plainly identified as records of a different patient some 30 years older than Franklin Miller.  [11, pp. 262-263] The undersigned finds substantial record evidence supports the ALJ's finding with respect to Miller's credibility.

Miller complains that ALJ Brock failed to give proper weight to the opinions of treating physician Dr. Smith of CFHC-Moss Point.  Miller testified he began seeing Dr. Smith in January 2011; Dr. Smith indicates his initial visit was in September  2011.  [11, pp. 315-316] CFHC records show visits in September, October and November of 2011, in March, May, June, September and December of 2012, and in February and March 2013.  [11, pp. 332-339, 344-351, 355-360, 362-366]  Dr. Smith stated diagnoses as pain in joints and hands (arthritis) and right-sided weakness secondary to stroke.  She prepared a residual functional capacity questionnaire following Miller's initial visit in which she indicated he would have to lie down during the workday in excess of typical breaks; could walk only one-half a city block without rest or significant pain; could sit no longer than 10 minutes at a time and stand 20 minutes at a time; could sit, stand or walk zero  hours in an eight-hour work day; would need half-hour long breaks every half-hour; could never lift 50 pounds, occasionally lift 10-20 pounds and frequently lift less than 10 pounds.  She estimated Miller would miss work more than four times a month. [11, pp. 315-316]  The CFHC records of Miller's first visit indicate he exercised or did moderate physical activity five days a week, and other than elevated blood pressure, contain no objective medical findings of abnormality on review of symptoms or physical examination. [11, pp. 334-336]  Dr. Smith prepared a second residual functional capacity questionnaire on March 4, 2013, which is identical in every particular to that of September 2011.  [11, pp. 368-369]  Because Dr. Smith stated no basis for her opinions, Miller's examinations were essentially normal, and other

physicians' examinations did not support the stated limitations and were contradictory to Smith's opinions, ALJ Brock rejected Dr. Smith's opinions. The undersigned finds no error in the ALJ's decision. An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). In *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005), the Court held that opinions, diagnoses, and medical evidence of a treating physician familiar with the claimant's condition, treatment and responses are generally accorded considerable weight in determining disability, but the doctor's opinions are not conclusive. The ultimate decisions as to residual functional capacity and disability are for the Commission. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). Where a treating physician's opinion is conclusory, or without objective medical evidence supporting it, or otherwise unsupported by the record or inconsistent with the record as a whole, the general rule does not apply and the ALJ may give the opinion little or even no weight. *Id.*; 20 C.F.R. § 404.1527(c).

      The record demonstrates that the ALJ reviewed and considered all the evidence of Plaintiff's claimed impairments. She followed the prescribed analysis, identified the evidence upon which she relied and adequately explained the weight she assigned to the evidence with respect to Miller's residual functional capacity. The Court finds upon review of the record in its entirety, that the decision that Miller remains capable of performing the medium work identified by the vocational expert is supported by substantial record evidence. The undersigned further finds Plaintiff has failed to demonstrate error by the ALJ's not ordering additional testing regarding Miller's claimed mental impairments. Miller did not allege intellectual disability in his applications for benefits and he failed to present evidence to establish that he met the definition of intellectual disability, *i.e.*, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period"

before age 22.  20 C.F.R. Part 404, Subpart P, App. 1 § 12.05.  The evidence of record with respect to Plaintiff's activities and prior work history all demonstrate his ability to function, and an ALJ is not obligated to investigate possible disabilities not alleged by the claimant or those not clearly indicated on the record.  *Leggett v. Chater*, 67 F.3d at 566.

## RECOMMENDATION

Based upon consideration of the entire record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards.  The undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it.  Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 17th day of November, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE